IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CURTIS GARNER, : | CIVIL ACTION |
|     Plaintiff : | |
| : | |
|     v. : | |
| : | No. 11-cv-5960 |
| CITY OF PHILADELPHIA et al., : | |
|     Defendants. : | |

M E M O R A N D U M   O R D E R

AND NOW, this 16th day of August, 2013, upon Consideration of Defendants' Motion for Summary Judgment (Doc. No. 33) and Plaintiff's Response thereto (Doc. No. 35), it is hereby ORDERED that the Motion is GRANTED. The Clerk of Court shall close this action statistically.

    I.      Factual Background

Plaintiff was housed as a pretrial detainee at the Curran-Fromhold Correctional Center facility of the Philadelphia Prison System from April 22, 2011 until September 15, 2011. (Doc. 33, Ex. B). Plaintiff alleges that, during this time: (1) he received inadequate medical treatment for a broken hand, (2) the panic buttons in prisoners' cells were non-functional, (3) prisoners were not permitted to shower immediately following "kitchen duty," and that (4) prison officials retaliated against Plaintiff for reporting concerns regarding the conditions of his confinement. Although not artfully crafted, we read Plaintiff's pro se filings to assert that each of these four complaints amounts to a constitutional violation entitling Plaintiff to relief against the City of Philadelphia and prison officials under 42 U.S.C. § 1983.[1]

Currently before the Court is Defendants' Motion for Summary Judgment (Doc. No. 33). For the reasons stated below, Defendant's Motion is GRANTED.

---

[1] Plaintiff specifically asserts claims against the following individuals: Louis Giorla, Commissioner of Prisons; John Delany, Warden of Curran-Fromhold Correctional Center; and Major Moore, Deputy Warder of Administration of Curran-Fromhold Correctional Center. Three additional defendants were previously terminated from this action.

1

II.     Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir.1988). A factual dispute is material if it could affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 249.

At summary judgment, the moving party has the initial burden to identify evidence that it believes shows an absence of a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694 (3d Cir.1988). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted).

On a motion for summary judgment, the evidence presented must be viewed in the light most favorable to the non-moving party. Anderson, 477 U.S. at 248. Nonetheless, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, or speculative. Id. at 249–50. At summary judgment, there must be more than a scintilla of evidence supporting the nonmoving party and more than simply metaphysical doubt as to the material facts. Id. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

III.   Discussion

Defendants argue that they are entitled to summary judgment, because Plaintiff's allegations do not amount to constitutional violations as a matter of law, and that even if they did, Plaintiff has neither produced evidence demonstrating (1) that the individual defendants had personal involvement in Plaintiff's alleged injuries, nor (2) that Plaintiff's injuries resulted from a policy, practice, or custom of the city of Philadelphia.[2] We agree and therefore grant summary judgment in favor of Defendants on each of Plaintiff's claims.

A.  Standard of Review

42 U.S.C. § 1983 provides a federal cause of action through which a plaintiff may recover money damages from a person who has violated his rights while acting under color of state law. Natale v. Camden County Corr. Facility, 318 F.3d 575, 580–81 (3d Cir. 2003).

Section 1983 does not provide a cause of action under the theory of respondeat superior. Accordingly, an officer is only personally liable under Section 1983 where his own actions have caused Plaintiff's injury. Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009) ("Because vicarious liability is inapplicable to [ ] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Likewise, a municipality is liable under Section 1983, only where the municipality's "policy or custom" caused Plaintiff's alleged constitutional injury. Monell v. New York Department of Social Services, 463 U.S. 658, 694, 98 S.Ct. 2018 (1978).

Under 1983, a municipal policy arises only out of a formal proclamation from a person with final authority on the matter. Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (a policy is created when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to

---

[2] Defendants further argue that Plaintiff has failed to exhaust administrative remedies with regard to the injuries alleged. As the parties submit conflicting evidence on this issue and we find that summary judgment is proper on the merits of Plaintiff's claim, we decline to address this argument.

the action issues an official proclamation, policy, or edict."). A custom does not require a formal proclamation; however, a custom must constitute a "course of conduct, [that] although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Bielevicz v. Dubinon, 915 F.2d 845, 950 (3d Cir. 1990).

   B. Fourteenth Amendment Claims

As Plaintiff was incarcerated at at the Curran-Fromhold Correctional Center as a pretrial detainee, we assess Plaintiff's complaints of (1) inadequate medical treatment, (2) deactivated panic buttons, and (3) insufficient shower privileges, under the Fourteenth Amendment. We find that none of these three claims amounts to a cognizable constitutional violation, and that even if one did, Plaintiff has not put forth sufficient evidence to establish 1983 liability.

   1. Standard of Review

Pretrial detainees are not within the ambit of the Eighth Amendment—as are inmates who have been convicted of crimes—but are instead entitled to the protections of the Due Process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Hubbard v. Taylor, 399 F.3d 150, 157-60 (3d Cir. 2005); Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir.1976). In Wolfish, the Supreme Court emphasized that the government "may ... incarcerate a person charged with a crime but not yet convicted to ensure his presence at trial," and that this has traditionally "meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial." Wolfish, 441 U.S. at 531, 537.

In evaluating the prison conditions to which a pretrial detainee is subject, "the proper inquiry is whether those conditions amount to punishment of the detainee" without due process of law. Wolfish, 441 U.S. at 535. The Supreme Court has highlighted that there is a "distinction between punitive

4

measures that may not be constitutionally imposed prior to a determination of guilt and regulatory restraints that may." Id. (internal citations omitted). In assessing whether pretrial confinement amounts to punishment:

> [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on whether [it has] an alternative purpose ... and whether it appears excessive in relation to [that] purpose.... Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Id. at 538-39 (citations, brackets and internal quotations omitted).

The Third Circuit has further established that, "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted prisoners." Boring, 833 F.2d at 471 (quoting Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir.1985), cert. denied, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986)) (and citing Whisenant v. Yuam, 739 F.2d 160, 163 n. 4 (4th Cir.1984); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir.1986); Garcia v. Salt Lake County, 768 F.2d 303, 307 (10th Cir.1985)).

In order for a prison condition to amount to an Eighth Amendment violation that is cognizable under Section 1983, an inmate must demonstrate that individually named defendants or institutional policymakers (1) denied Plaintiff of an "objectively, sufficiently serious" need, and (2) acted with "deliberate indifference' to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); Stoneking v. Bradford Area School Dist., 882 F.2d 720, 725 (3d Cir. 1989); Boring, 833 F.2d at 471. A pretrial detainee's "desire to be free from discomfort" is wholly insufficient to establish a

fundamental liberty interest protected by the constitution. Wolfish, 441 U.S. at 534-35 (citing Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)).

To establish "deliberate indifference to a serious medical need" a plaintiff must demonstrate the "unnecessary and wanton infliction of pain" and that prison officials had actual knowledge of an excessive risk to inmate health or safety and consciously disregarded that risk. Estelle, 429 U.S. at 104; Farmer, 511 U.S. at 837. The Third Circuit recently explained:

> To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm. For instance, a plaintiff may make this showing by establishing that the defendants intentionally den[ied] or delay[ed] medical care. However, [w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

Fantone v. Herbik, 13-1644, 2013 WL 2564429 at *2, --- Fed.Appx. ---, (3d Cir. June 12, 2013) (quoting Giles v. Kearney, 571 F.3d 318, 330 (3d Cir.2009); United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n.2 (3d Cir.1979)) (internal quotations and citations omitted).

Courts must defer to correction officials' "expert judgment" in managing correctional facilities, and simple negligence or medical malpractice does not establish a constitutional violation. Hubbard, 399 F.3d at157-60 (citing Wolfish, 441 U.S. at 540 n. 23); Boring, 833 F.2d at 471. In reviewing challenges to pretrial conditions, the Supreme Court cautions that, federal courts should not, "in the name of the Constitution, become increasingly enmeshed in the minutiae of prison operations," and that a court's analysis must reflect "constitutional requirements" rather than "a court's idea of how best to operate a detention facility." Wolfish, 441 U.S. at 539, 562.

2. Plaintiff's Medical Care

Plaintiff alleges that, during his incarceration at the Curran-Fromhold Correctional Center, Plaintiff injured his hand, and prison officials' delayed treatment exacerbated this injury and resulted in Plaintiff's hand needing to be broken if he pursues surgery in the future. Despite these allegations, Plaintiff has failed to produce any factual evidence regarding his initial injury, the treatment that he received, or additional injuries that he has suffered due to this treatment. The record further demonstrates the following facts:

(1) Plaintiff broke his index finger on June 13, 2011, during a fight with another inmate (Doc. No. 33, Ex. G);

(2) Plaintiff saw a healthcare professional regarding his finger the following day, on June 14, 2011, and X-rays were taken (Doc. No. 33, Ex. K at 86);

(3) Plaintiff was scheduled to see a physician on June 25, 2011 but did not appear for his appointment (Id. at 90);

(4) Plaintiff was Prescribed Zoloft on June 26, 2011 (Doc. 33, Ex. L at 191);

(5) Additional x-rays of Plaintiff's finger were taken on July 12, 2011 (Id. at 94);

(6) Plaintiff was seen by a physician on July 28, 2011, who placed Plaintiff's finger in a Stax splint, and referred Plaintiff to a specialist (Id. at 131);

(7) Plaintiff was seen by a specialist on October 21, 2011, who took a third set of x-rays, observed a bony mallet malunion and arthritis of Plaintiff's left index DIP joint, and advised Plaintiff of his surgical options (Id. at 106-07; Doc. 33, Ex. L. at 120-21);

(8) Plaintiff was additionally treated by a registered nurse on June 20, 2011, June 30, 2011, July 14, 2011, July 25, 2011, August 4, 2011, August 11, 2011, August 12, 2011, August 23, 2011, August 29, 2011, September 13, 2011, and September 19, 2011 (Doc. 33, Ex. K at 87 – 105);

(9) Plaintiff was treated by a physician's assistant on June 21, 2011, June 24, 2011, June 26, 2011, July 1, 2011, July 15, 2011, and August 5, 2011 (Id.);

(10) Plaintiff was released from the Curran-Fromhold Correctional Center on November 22, 2011.

While the Court sympathizes with Plaintiff's injury and related complications, we cannot find that Plaintiff received inadequate medical treatment rising to the level of a constitutional violation. The facts indicate that Plaintiff was treated by prison medical staff within one day of injuring his finger and on at least twenty additional occasions between the date of his injury and the date of his discharge. During these visits, Plaintiff's finger was x-rayed and splinted, Plaintiff was provided prescription medication, and Plaintiff was referred to an orthopedist. Plaintiff's only complaint is that he was not treated by an orthopedic specialist in a timely manner. While Plaintiff alleges that his treating orthopedist stated that he only treats patients "every couple of months at this facility" and that a nurse informed Plaintiff that his treating orthopedist only visits the facility "every couple of months," Plaintiff has not offered a scintilla of factual evidence to support these allegations. (Doc. No. 21).

Plaintiff's claims of delayed treatment are not only unsubstantiated by the factual record, but also amount to simple negligence, at best. As we discuss above, allegations of negligent medical care are wholly insufficient to establish "deliberate indifference" amounting to a denial of due process. See e.g. Fantone, 2013 WL 2564429 at *2 (failure to send inmate to a specialist and failure to approve inmate for surgery does not establish deliberate indifference without proof of some culpable state of mind). Importantly, even if Plaintiff could establish that he received constitutionally inadequate medical care, Plaintiff has not provided a shred of evidence (nor has he alleged) that any such violation was the result of a named defendant's individual conduct or the result of a policy, practice, or custom of the City of Philadelphia. We accordingly grant Defendants' Motion with regard to Plaintiff's purportedly inadequate medical treatment.

### 3. Deactivated Panic Buttons

Plaintiff next asserts that he is entitled to relief, because the panic buttons in inmates' cells were nonfunctional during his incarceration at the Curran-Fromhold Correctional Center. Plaintiff does not,

however, allege that he required a panic button at any point during his incarceration, nor does he allege that his lack of access to a panic button caused him injury.

Importantly, even if Plaintiff could demonstrate that he was injured because his panic button was deactivated, we would not find that any such injury amounts to a denial of due process. As we discuss above, although pre-trial detainees are entitled to the protections of the Fourteenth Amendment's Due Process clause, the parameters of a pre-trial detainee's claim that he has been subjected to unconstitutional conditions of confinement "are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment." Keller v. Cnty. of Bucks, 209 F. App'x 201, 205 (3d Cir. 2006). Conditions of confinement only violate the Eighth Amendment where the deprivation alleged (1) is "objectively, sufficiently serious," amounting to the denial of "the minimal civilized measure of life's necessities"; and (2) results from "deliberate indifference." Farmer, 511 U.S. at 834 (internal quotations and citations omitted).

Although panic buttons may offer inmates additional safety and protection, we cannot find that active panic buttons constitute a "minimal civilized measure of life's necessities" nor that Defendants deactivated Plaintiff's panic button due to their "deliberate indifference" to prisoner safety. See e.g. Brown v. Pastrana, 446 F. App'x 270, 272 (11th Cir. 2011) (no Eighth Amendment violation where inmate suffered physical injuries after waiting over one hour for medical assistance when he fell from an eight-foot-high bed, where he slept without a panic button or railings); Wilson v. Ryker, 451 F. App'x 588, 589-90 (7th Cir. 2011) (no Eighth Amendment violation where inmate faced immediate threat of gang violence due to prison policy of ignoring panic button calls). We accordingly grant Defendants' Motion with regard to this claim.

### 4. Showers

Plaintiff additionally asserts that prison officials violated his constitutional rights by denying him immediate access to showers following kitchen duty. Plaintiff again fails to provide any evidence to

support this claim and merely alleges that, inmates on kitchen duty often waited two to three hours to shower following kitchen work. Additionally, Plaintiff does not allege that delayed showers caused him injury.

Even if Plaintiff properly demonstrated that he was injured as a result of delayed showers, we could not find that such delay amounts to a constitutional violation, under the standard set out above. The Third Circuit has conclusively established that a "minimal civilized measure of life's necessities" does not dictate that one must shower each day or even each week, and this standard certainly does not require that one shower immediately following kitchen work. Laurensau v. Romarowics, 13-1283, 2013 WL 2636643 (3d Cir. June 13, 2013) (no constitutional violation where inmate was denied access to showers for seven days); Dockery v. Beard, 509 F. App'x 107, 113 (3d Cir. 2013) (citing Davenport v. DeRobertis, 844 F.2d 1310, 1316 (7th Cir.1988)) ("limiting inmates to one shower a week does not violate the Eighth Amendment"); Adderly v. Ferrier, 419 F. App'x 135, 139-40 (3d Cir. 2011) (no constitutional violation where inmate was denied access to showers for seven days); Tapp v. Proto, 404 F. App'x 563, 567 (3d Cir. 2010) (no denial of due process where pre-trial detainee was denied access to exercise and shower facilities two days each week). We therefore grant Defendants' Motion with regard to Plaintiff's claim of insufficient access to showers.

        C.      Retaliation

Plaintiff finally alleges that prison officials retaliated against him for filing grievances and informal complaints about the conditions of his confinement. As an initial matter, we note that the contours of Plaintiff's retaliation claim remain unclear. Plaintiff's Complaint suggest that prison officials retaliated against Plaintiff for his grievances by placing Plaintiff in solitary confinement. Nonetheless, Plaintiff's Response to the instant Motion, switches course, and suggests that prison officials retaliated against Plaintiff by transferring Plaintff to a different facility. We find that neither allegation can survive summary judgment.

The filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity. Mearin v. Vidonish, 450 F. App'x 100, 102-03 (3d Cir. 2011) (citing Milhouse v. Carlson, 652 F.2d 371, 373–74 (3d Cir.1981)). Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional. Mitchell v. Horn, 318 F.3d 523, 529–31 (3d Cir.2003).

To state a prima facie claim for retaliation, a plaintiff must allege that: "(1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of the prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." Bistrian v. Levi, 696 F.3d 352, 375-76 (3d Cir. 2012) (quoting Rauser v. Horn, 241 F.3d 330, 333–34 (3d Cir.2001)) (internal quotations omitted). Nonetheless, even if a plaintiff properly alleges a prima facie retaliation claim, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

Here, Plaintiff alleges that he engaged in the constitutionally protected activity of filing grievances regarding the conditions of his confinement, and that this conduct caused prison officials to either place him in solitary confinement or transfer him to another facility. While the parties dispute whether Plaintiff did, in fact, file such grievances, Defendants have demonstrated that no such activity caused Plaintiff to be placed in solitary confinement. Defendants have produced evidence establishing that, on June 15, 2011, Plaintiff pleaded guilty to fighting with another inmate, and that Plaintiff was placed in Disciplinary Segregation for seven days as a consequence of this fight. (Doc. No. 33 Exs. G, H, and I). Plaintiff has not rebutted this evidence. With regard to Plaintiff's claim that he was transferred to another facility in retaliation for filing grievances, Plaintiff has neither demonstrated that his transfer constitutes "adverse action" nor that his transfer was caused by his constitutionally protected activity. The Pennsylvania state prison system includes many facilities, and inmates are regularly transferred among these facilities for a number of administrative reasons. Plaintiff has not alleged that he was

11

transferred to a facility that was less desirable than the Curran-Fromhold Correctional Center, nor has he produced a shred of evidence from which a reasonable jury could conclude that his constitutionally protected activity was a motivating factor for his transfer. Without such evidence, a reasonable jury could not find that Plaintiff has proven retaliation.

IV.     Conclusion

For the reasons stated above, it is hereby ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 33) is GRANTED. The Clerk of Court shall close this action statistically.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.